LEONARD P. BIRNBAUM ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

SUPERIOR COURT HARTFORD COUNTY FILE No. 146368

Memorandum filed September 30, 1968

*Ribicoff & Kotkin,* of Hartford, for the plaintiffs.

*Robert K. Killian,* attorney general, and *Milton H. Richman* and *Arnold Sbarge,* assistant attorneys general, for the defendant.

PARSKEY, J. The subject property in this condemnation proceeding is located on the easterly side of Washington Street in the city of New Britain. It consists of an irregular piece of land, containing

about 31,000 square feet, and a six-story building constructed of reinforced concrete. The defendant condemned the property for highway purposes and assessed damages at $257,300. The plaintiffs appealed from this assessment to the Superior Court and the matter was referred to a state referee, who reassessed damages at $102,000, allocating all of the damages to the land and none to the building. The plaintiffs moved under § 363 of the Practice Book for a rejection of the referee's report and a reference to another referee for a new trial, claiming, inter alia, that the referee had no authority under § 13a-76 of General Statutes to reduce an assessment of damages and that the referee's conclusion that the building was valueless was erroneous and improper.

## I

The plan for acquisition of land for state highways by condemnation is spelled out in §§ 13a-73, 13a-74 and 13a-76 of the General Statutes. Where the assessments by the highway commissioner do not exceed $15,000, acceptance by the property owner is all that is required in order to authorize payment by the state comptroller. Assessments in excess of $15,000 must be approved as reasonable in amount by a state referee. Where the property owner appeals from an assessment, the application must be referred to a state referee for a reassessment of damages. It is apparent that the plan envisioned by these sections casts the state referee in the role of protector of the public interest, insuring that the public treasury shall not pay either more or less than just compensation to the property owner. Where the property owner and the highway commissioner fail to agree, the application is referred to a referee not for approval or rejection but for reassessment. In reassessing, the referee is

not required to use the commissioner's assessment either as a floor or a ceiling; instead, he discharges his statutory obligation by arriving at his own figure of just compensation based on the evidence before him. The plaintiffs' claim that the referee had no authority to reduce the assessment is therefore without merit.

## II

The crucial question involved in this case is whether there is any basis in the evidence for the referee's conclusion that the building on the subject property had no value. Just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit. *Winchester* v. *Cox*, 129 Conn. 106, 114. This fair equivalent in money, or, more appropriately, the fair market value, is a price which in fair negotiations a willing buyer and a willing seller could probably agree upon. *Del-Vecchio* v. *New Haven Redevelopment Agency*, 147 Conn. 362, 363. Common experience tells us that no seller would willingly sell and no buyer would expect to buy a parcel of land with a building on it for the price of the land alone if the building had any economic value whatsoever. If the value of a structure is under consideration, one must determine first whether it has deteriorated physically to such an extent that it not only is worth less but is in fact worthless.

In this case, the referee found the building in question to be sound structurally. Where a structure is physically sound, one must then determine not only that it cannot functionally be utilized fully for its highest and best use but, more importantly, that it cannot be utilized even partially for any use. In this case, none of the evidence dealt with anything other than full use of the entire structure for its highest and best use. All of the appraisers, those

for the highway commissioner as well as those for the property owner, agreed that the building had a substantial value for such purpose. The rejection of such evidence does not permit the conclusion that the building had no value for any purpose.

## III

Since the appeal must be referred for a new trial, mention should be made of the referee's finding that a reasonably prudent investor would not invest the amount of money necessary to rehabilitate the building, viz., $325,000 to $439,000. The referee did not find either the anticipated gross income, vacancy ratio or expenses. It is obvious that he felt no need to do so after having found that economic rehabilitation of the structure was not warranted. The referee's finding results in a curious paradox. The various techniques employed by appraisers in estimating fair market value all assume that any purchaser would be warranted in buying property at that value. Thus, if the underlying data are reasonably accurate and the appropriate appraisal method is used, the end product must represent prudent investment. To accept, as one must, the legal concept of fair market value but to ignore the component factors which determine that value is to leave the legal concept in limbo. To accept the legal concept and at the same time to question whether a prudent investor would buy at that figure is to chase one's definitional tail.

The plaintiff's exceptions and objections to paragraphs 43 and 46 of the referee's report are sustained for the reason that these paragraphs are found without evidence. The plaintiff's exceptions and objections to paragraphs 49 and 51 of the referee's report are sustained because the conclusions therein contained are not supported by the findings as corrected.

Accordingly, paragraphs 43, 46, 49 and 51 of the referee's report are stricken, the referee's report is rejected and the matter is referred to Hon. Raymond E. Baldwin, state referee, for a new trial.