[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two cases, tried together, arise out of an eminent domain taking by the Town of Monroe.
On April 24, 1996, the governing body of the town voted to acquire by conveyance or eminent domain, certain premises for the purpose of constructing and installing a biking/hiking trail. In accordance therewith, Jeffrey T. Whone, fiscal officer of the Town, on June 5, 1996, filed a motion of taking together with a statement of compensation, with respect to all abutting owners of the proposed biking/hiking trail. Two of the abutting owners are the plaintiffs in these two cases and it is conceded by the defendant, Whone, that the taking included a portion of their respective parcels.
The first case the court will consider is that of the plaintiffs, Asterios Ftergiotis and Hynaki Ftergiotis, owners of the parcel at 21 Grant Road, Monroe, The statement of compensation attributed to these plaintiffs the amount of $3,791.
The second case involves plaintiffs by the names of Eugenia and John Kallivrousis, whose parcel is located at 311 Pepper Street, Monroe. The amount attributed to these plaintiffs in the statement of compensation is $1,895.00.
Both plaintiffs have appealed for a review of the amounts allocated to them in the statement of compensation.
 I. Ftergiotis Appeal
In this appeal, Andrew Altford, real estate appraiser, testified on the plaintiff's behalf. By using comparable sales, Altford first determined that the plaintiffs' property, improved, was valued at $200,000. Then, using vacant land comparable he determined that the land before taking was $80,00, and, after the taking $75,000, thus arriving at a loss of $5,000 due to the land taking. The defendants' appraiser, Patrick Wellspeak, arrived at the same amount for the value of the land taken.
In addition to the value of the land loss, the plaintiffs herein claim consequential at damages to the remaining property. When a portion of a tract of land is taken, the owner is entitled to as damages, the difference between the market value of the whole tract before the taking and the market value of what remained. This rule has been held to include severance damage that right result from any prospective use of the taking as well CT Page 1046 as damages immediately flowing from the taking. Alemany v. Comm.of Transportation 215 Conn. 437, 445.
In arriving at their respective opinions of the consequential damage suffered as a result of this taking, both appraisers used the capitalization of income method and both used identical capitalization percentages of 10%. While the court has reservations about the manner in which the capitalization of income method was used in this case (i.e., gross rental values as opposed to net rented values), both appraisers used the same formula, so the court will go along.
Appraiser Altford for the plaintiff, using comparable market data, found the fair market rental value of the plaintiffs' property to be $1350 monthly before the taking and $1250 monthly after the taking, or an annual difference of $1200 before and after. This he capitalized at 10% arriving at a figure of $12,000 as severance damage. Adding this to the value of the land taken (5,000) he arrived at a figure of $17,000 as total damages due to the taking.
Appraiser Wellspeak for the defendant, also using comparable market rental data, arrived at an annual potential gross income before the taking, of $17,400. Concluding that the proposed recreational use would increase traffic in the rear of the plaintiffs' property and decrease privacy, he countered such negative factors by suggesting that current fitness trends such as in-line skating, fitness walking and jogging-walking were activities that the proposed biking/hiking trail supported and this should be considered a positive factor. He resolved the dilemma in his own mind by speculating that the proposed biking/hiking trail would diminish he market rent by $60 monthly or an annual rent loss of $720. Deducting this from the annual before taking rental value of $17,400, he arrived at an after potential gross income value of $16,680. Capitalizing both figures at 10%, he arrived at damages of $7,200, which he opined was total compensatory damage due to both direct and consequential damage. Deducting $5,000, which he found in agreement with plaintiffs' appraisers, as the land value taken he found that consequential damages to $2,200.
 II. Kallivrousis Appeal
In this appeal, the same appraisers, Andrew Altpfail and Patrick Wellspeak, testified for the respective parties. CT Page 1047
On behalf of the plaintiff, Altpfail, by the comparable sales method, found the value of the parcel taken to be $2500. With respect to the consequential damages, Altpfail issued two reports. His report of April 2, 1997, using the capitalization approach, found that the taking resulted in an annual rental loss of $900, which capitalized at 10%, resulted in consequential damages to the remainder of the property, of $9000. This amount, added to the amount of $2,250 land value taken, totaled damages of $11,250.
On May 12, 1997, Altpfail issued a second report in which he found the value of the land taken to be $2,500 and the annual loss of rentals to be $12,000 thus affording total damages of $14,500. Defendants counsel intimates that the interim increase was due to Kallivrousis' counsel being furnished a copy of the Ftergiotis report.
The appraiser for the defendant, Wellspeak, using the comparable sales comparison appraisal, found the land value before the taking to be $92,500, after the taking to be $90,500, thus finding direct damage the parcel taken to be $2,000. He found a diminution in the rental value of the parcel after the taking to be $300 annually. Again, using the capitalization of income method at a capitalization rate of 10%, he found total compensatory damages to be $3000 from which he deducted his land value of $2000, resulting in consequential damages of $1000 via the income capitalization approach.
The court finds little in the analyses of the appraisers to persuade it. The court sees no reason why one figure should be deducted from the other. When the capitalization of income method is used after determining the diminution of rental income because of the existence of the biking/hiking trail, all that is determined is the value of the parcel taken, albeit, by a different method.
"Where a portion of a tract of land is taken, the rule for estimating the damages to which the owner is entitled, in the absence of unusual circumstances (citation omitted) is thoroughly settled; it is the difference between the market value of the whole tract as it lay before the taking, and the market value of what remained of it thereafter, and after the completion of the public improvement." Andrews v. Cox, 127 Conn. 455, 457. CT Page 1048
It does not necessarily represent consequential or severance damage to the remainder of the tract. The concept of severance damage, A/K/A consequential damage, has a life of its own.
The court finds both appraisers were speculative in arriving at diminished market rental values after the advent of the biking/hiking trail, so the court will engage in some speculation of its own.
As heretofore noted, on April 24, 1996, the Town of Monroe, upon recommendation and approval of the Town Council and the Board of Finance, voted to authorize by conveyance or by the exercise of the power of dominant domain a fee interest in certain property for the construction and installation of a biking/hiking trail which is the subject of these proceedings.
Counsel for both the Ftergiotis and Kallivrousis parties have asserted, and it is not disputed by the defendant, that there is no limit to the biking or hiking, that no curfew has been imposed, and, that, therefore, mopeds, motorcycles, any kind of gas powered go-carts or gas propelled engines are free to use the trail at any time of the day or night, all to the annoyance and harassment of the property owners. The plaintiffs will suffer from undue noise, loss of privacy, screening security and the use of their backyards for family events.
Under the rule of cases such as Alemany v. Comm. ofTransportation 215, Conn. 437, it is proper to consider "such use of the land taken as would in any reasonable anticipation be most disadvantageous to the landowner," at page 445. "The landowner need not demonstrate that a more detrimental use is likely to occur; all possibilities that would affect market value are relevant."
The argument is made that the Kallivrousis parcel is smaller than that of Ftergiotis and thereby not as severely affected. The court finds that the size of the parcel should have no bearing on the annoyance and harassment visited upon the owners. The fact that the Ftergiotis property is at the very beginning of the trail is a factor that should be considered.
In the Ftergiotis case, the court finds damages for the parcel taken in the amount of $5,000, and in addition, severance damages in the amount of $10,000. The court further allows appraisal fees in the amount of $800 and $300 for appraisal CT Page 1049 testimony.
In the Kallivrousis case, the court finds damages for the parcel taken in the amount of $2,250 and, in addition, severance damages in the amount of $7,500. The court further allows appraisal fees in the amount of $500 and $300 for appraisal testimony.
Statutory interest shall apply to both cases, from the date herein to the date of payment.
Judgments may enter accordingly.
BELINKIE, J.R.